UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LIVONIA PROPERTY HOLDINGS, L.L.C.,

    Plaintiff,

                                                                              Civil No. 10-11589
                                                                              Hon. John Feikens

    v.

12840-12976 FARMINGTON ROAD
HOLDINGS, L.L.C.,

    Defendant.

---

**OPINION AND ORDER DENYING**
**PLAINTIFF'S MOTION FOR RECONSIDERATION [Dkt. 30]**

**I. INTRODUCTION**

Plaintiff seeks reconsideration of this Court's Opinion and Order Denying Plaintiff's Motion for Preliminary Injunction and Dissolving Temporary Restraining Order (Dkt. 24). As Plaintiff correctly notes, to succeed on a motion for reconsideration, the moving party must demonstrate both a palpable defect and that a different disposition of the case will result from a correction of that defect. E.D. Mich. LR 7.1(h)(3). Although Plaintiff asserts certain challenges regarding its likelihood of success on the merits, it fails to challenge the Court's finding that "because Borrower is permitted to redeem after the sale, it has not shown that irreparable harm will occur at the time of the foreclosure sale." (Dkt. 24 at 24). And, as I noted in my original Order, "a finding that there is no likelihood of irreparable harm . . . is usually fatal." (*Id*. at 8). Thus, regardless of any alleged "palpable defect", Plaintiff has not satisfied the requirements for a motion for reconsideration, and this Motion is therefore denied. Nevertheless, because the factors for granting an injunction must be balanced, I will address the Plaintiff's arguments regarding its likelihood of success.

## II. ANALYSIS

Plaintiff raises several purported defects in my original Order: (1) the Court was misled with respect to the record chain of title; (2) the Court improperly found that allegedly-unrecorded-interim assignments do not create a defect in the record chain of title sufficient to prevent foreclosure by advertisement; (3) Defendant has not demonstrated adherence to all contracts providing for the assignment of the Mortgage and Note to each subsequent assignee; (4) Defendant has not demonstrated that the Trust was in existence at the time the Mortgage and Note were assigned to it; and (5) the Court improperly found that Plaintiff lacks standing to challenge the assignments.

First, a note about Plaintiff's standing. Plaintiff, as a mortgagor subject to foreclosure by advertisement, certainly has standing to challenge whether Defendant has complied with the statutory requirements for that foreclosure. But it does not have standing to go beyond the statutory requirements to inspect each and every aspect of every contract or agreement between any predecessor and successor mortgagee, searching for "irregularities" and noncompliance. As Plaintiff acknowledges,[1] and as I previously explained in great detail, Plaintiff cannot avoid its contractual obligations under the Loan Documents (including the <u>contractual</u> right of foreclose by advertisement contained within the Mortgage) by arguing that the assignments of those documents were invalid or ineffective.[2] Thus, if Defendant has complied with the required statutory mandates and Defendant

---

[1]Plaintiff admits it "does not challenge the underlying obligation." (Pl. Mot. for Recons. at 18).

[2]*See* Dkt. 24 at 15 ("Borrower certainly has an interest in avoiding foreclosure. But the validity of the assignments does not effect *whether* Borrower owes its obligations, but only to *whom* Borrower is obligated."); *id*. at 17 ("Borrower cannot now step into the shoes of an assignor to assert its contract rights.").

is the holder of Plaintiff's Note and Mortgage, it has the contractual and statutory right to foreclose by advertisement, and this Court will not enjoin Defendant from doing so.

Foreclosure by advertisement is "a matter of contract, authorized by the mortgagor, and ought not to be hampered by an unreasonably strict construction of the law." *Church & Church, Inc. v. A-1 Carpentry*, 766 N.W.2d 30, 36 (Mich. App. 2008); *National Airport Corp.*, 252 N.W.2d 519, 521 (Mich. App. 1977) ("The power is part of the contract, and should be construed on principles applicable to contracts, and not as a hostile process.") (quoting *Reading v. Waterman*, 8 N.W. 691, 692 (Mich. 1881)). The Michigan Supreme Court has explained that substantial compliance with the statutory requirements for foreclosure by advertisement is all that is required:

> The statutes were <u>intended to prevent surprise or unfairness</u>, and they should be enforced in everything substantial. Courts cannot disregard any of their positive provisions. But on the other hand those provisions cannot be enlarged or unreasonably construed so as to render mortgage sales unsafe, or to make bidding hazardous. <u>The law was designed to encourage and not to destroy recourse to these simple and cheap remedies; and while no substantial right should be disregarded, substantial regularity is all that should be [required]</u>.

*Reading*, 8 N.W. at 692 (emphasis added).

In *Peterson v. Jacobs*, the Michigan Supreme Court addressed whether a defect in the statutory requirements for foreclosure by advertisement rendered a foreclosure sale invalid. In that case, the plaintiff argued that the statute required a foreclosure notice to describe the names of every mortgagor and mortgagee, "<u>irrespective of whether there was a complete and duly recorded reassignment by such assignee, or not</u>." 6 N.W. 2d 533, 535 (Mich. 1942) (emphasis added). The Court found that failure to mention assignments to and from an interim assignee, who held the mortgage for "some eight months," was not such a substantial irregularity as to render the foreclosure by advertisement void. *Id.* at 535-36.

3

Plaintiff argues that *Peterson* was decided pursuant to a prior version of the statute, which did not require "a record chain of title." As Plaintiff so aptly notes, however, the then-existing statute did require "a recording of the mortgage, and all assignments." (*See* Pl. Mot. for Recons. at 13 (citing *Feldman v. Equitable Trust Co.*, 278 Mich. 619, 625 (Mich. 1937))). Thus, while the language of the statute has changed, the requirement that the mortgage and assignments be recorded remains the same.[3]

Plaintiff next argues that when the *Peterson* court "announced" the rule that the foreclosure-by-advertisement statute requires only "substantial compliance," it referred only to the foreclosure notice.[4] I do not read *Peterson* so narrowly. The *Peterson* court based this "announcement" on the general principle that statutory foreclosures are matters of contract that "ought not be hampered by an unreasonable construction of the law." *Id*. at 535. Moreover, because the *Peterson* court considered the need to publish notice of assignments "whether . . . complete and duly recorded . . . or not," its holding implicitly recognizes that (1) mortgages may be validly "assigned" without a "complete and duly recorded" assignment document; and (2) those assignments do not prevent foreclosure by advertisement so long as they do not prevent "substantial compliance" with the statute.[5] These implicit findings are consistent with Michigan precedent generally permitting

---

[3]In fact, as Defendant correctly notes, the old language, requiring the recording of "the mortgage and all assignments," is more strict than the current language (applicable to this case), which requires only a record chain of title. And, the Michigan Supreme Court in *Arnold v. DMR Financial Services*, 532 N.W.2d 852 (Mich. 1995) construed M.C.L. 600.3204 by relying upon *Feldman*, *supra*, which considered the predecessor statute. Thus, if the modification to the statute since *Peterson* favors either party, it favors Defendant.

[4]The substantial-compliance rule was "announced" at least as early as 1881, in *Reading*, 8 N.W. at 692.

[5]This is confirmed by the Michigan Supreme Court's later holdings in *Arnold* and *Feldman* (with *Feldman* construing the foreclosure-by-advertisement statute at issue in *Peterson*, and *Arnold*

4

assignments in blank. *See* (Dkt. 24 at 20 (citing authority)); *see also Kurbel v. O'Hair*, 240 N.W. 57 (Mich. 1932) (recognizing the validity of a deed executed in blank; "if the blank were filled up after delivery, the grantor, if he claimed the benefit of accompanying and related contracts, would thereby make the deed as completed his own, and preclude himself from objecting to the invalidity afterwards.") (quoting *Lockwood v. Bassett*, 14 N.W. 492, 493 (Mich. 1883)).

But the strict rule urged by Plaintiff – that every assignment of a mortgage must occur pursuant to an executed assignment document, naming the assignee at the time of execution, and thereafter recorded – would effectively prohibit all assignments in blank. Indeed, blank assignments are, by definition, not recorded and not recordable.[6] Under Plaintiff's reading, however, even after

---

construing the amended statute).

In *Feldman*, the plaintiff, a mortgagor, complained that an unrecorded assignment (for security purposes) of a mortgage invalidated a foreclosure by advertisement. The defendant, the mortgagee of record, argued that "the holder of an unrecorded assignment has no right to foreclose by advertisement and that the holder of the record title is the only proper party to institute such proceedings." 270 N.W. at 810. The Court adopted the defendant's reasoning and concluded that "[h]aving determined that the defendant company is the only party having the right to foreclose the mortgage by advertisement, and such foreclosure being regular and in accordance with the statute, the conclusion is inevitable that plaintiff's bill of complaint must be dismissed." *Id*. at 811.

And *Arnold* addressed the same question under the successor version of the statute. In that case, again, the plaintiff argued that an unrecorded assignment (for security purposes) prevented foreclosure by advertisement because the statute required that <u>all</u> assignments be recorded. *Arnold*, 532 N.W.2d at 855. The court rejected the plaintiff's reading of the statute and adopted the *Feldman* reasoning: "we hold again, that [the foreclosure by advertisement statute] provided that only the record holder of the mortgage could foreclose by advertisement, and the mortgagor was not affected by the fact that others had an unrecorded interest in the mortgage." *Id*. at 856.

Similarly here, the Defendant, as record holder of the mortgage, is the only party that may foreclose by advertisement. The Plaintiff is unaffected by any other unrecorded interests (which may or may not have existed) in the mortgage.

[6]Plaintiff asserts, without authority, that "Assignments of mortgages in blank . . . are prohibited in Michigan as they violate the Michigan recording statute . . . in failing to identify the grantee and lack present intent." (Pl. Mot. for Recons. at 8-9 n. 7). Although an assignment of a mortgage in blank cannot be recorded, it does not follow that it is "prohibited" in Michigan. Once the blanks have been completed, as the law permits, the assignment can be properly recorded and

5

the blanks are filled in, and the assignment recorded to perfect an interest in the record chain of title, the assignee has not established his right to foreclose by advertisement because there <u>could have been</u> an interim holder of the blank assignment that did not record an entry in the chain of title. And, under Plaintiff's purported rule, a mortgagor attempting to avoid foreclosure by advertisement – <u>a remedy to which he agreed by contract</u> – could impose great expense and delay in the foreclosure process by alleging that the record-holder of the mortgage must <u>prove</u> the non-existence of interim holders of any assignments in blank (something the statute, itself, does not require). As the Michigan Supreme Court acknowledged, however, the foreclosure-by-advertisement statute "was designed to encourage and not to destroy recourse to these simple and cheap remedies." *Reading*, 8 N.W. at 692. It would be "perfectly useless and serve no good purpose" for interim holders of assignments in blank to execute and record separate assignment documents "unless such legal formalism is mandatory." *Peterson*, 6 N.W.2d at 536. I do not find that the law requires such formalism.

The substantial-compliance rule is also consistent with the purpose of the recording laws: "that the true state of the title be represented . . . in the public records . . . [and further] to protect an innocent purchaser." *See Harr v. Coolbaugh,* 59 N.W.2d 134 (Mich. 1953). The foreclosure by advertisement statute requires a "record chain of title . . . evidencing the assignment of the mortgage to the party foreclosing the mortgage." M.C.L. 600.3204(3). The same statute also requires that the

---

will then (and only then) establish notice of the listed assignee's interest in the chain of title. The holder of an assignment in blank thus assumes some risk that an intervening party could record a superior interest in the chain of title during any period that the assignment remains "in blank" and unrecorded. *See Church & Church, Inc.*, 766 N.W.2d at 39 (explaining that Michigan's race-notice statute, which provides that any conveyance of real estate that is not recorded is void as against a subsequent purchaser in good faith, applies to mortgages).

6

foreclosing party hold the original note. M.C.L. 600.3204(1). These rules permit <u>only</u> the party who holds the note and is record holder of the mortgage, with a record chain of title traceable to the original holder, to foreclose by advertisement. They also ensure that the mortgagor has notice of the party that is claiming that right (i.e., <u>only</u> the record holder of the mortgage).

Here, the Plaintiff acknowledges that a <u>record chain of title</u> exists evidencing transfers from the original mortgage holder (Lehman Brothers) to the Trust, and from the Trust to the current lender (Defendant). There are no unaccounted for or broken "links" in this chain. And, unlike many of the cases on which Plaintiff relies,[7] the foreclosure by advertisement in this case was not initiated by someone outside the chain of title. Plaintiff, however, is unsatisfied with the <u>record chain of title</u>; instead it purports to challenge whether other assignment documents do or should exist, and if so, whether they must be recorded. There is no evidence that other assignments were executed, rather than that the original assignment was executed in blank, transferred in blank to each subsequent assignee (whomever those entities may be), and ultimately (approximately one month later) that the Trust affixed its name as the assignee and recorded the assignment to place all the world (including Plaintiff) on notice of its claim. Because Defendant has established a <u>record chain of title</u> from the original lender to it, it has substantially – if not completely – complied with the statutory requirements. Whether some interim assignee held an assignment in blank or any other unrecorded document does not alter or otherwise cloud the unbroken record chain of title in this case. In these circumstances, Plaintiff cannot credibly argue that it (or anyone else) will suffer "surprise or unfairness" if the foreclosure by advertisement proceeds. *See Reading*, 8 N.W. at 692.

---

[7] In fact, almost every case upon which Plaintiff relies, including *Ibanez* (discussed extensively below) involves a foreclosure by advertisement initiated (and in some cases, completed) by a party that was not the record holder of the mortgage at the time the foreclosure was initiated.

7

Plaintiff also raises several arguments relating to whether the Court was misled about certain transfers of the Loan Documents. Among them, Plaintiff argues that the Court does not have "competent evidence" of the PSA or certain contracts between Lehman Brothers and LBHI. And, according to Plaintiff, the Court was misled as to whether SASC or SASC II was the proper party to the PSA, and whether that party (as depositor to the Trust) ever held the Note or Mortgage. Plaintiff also argues that the Trust was not in existence when the assignment to it was executed. According to Plaintiff, these "irregularities" alter or otherwise cast doubt on the "record chain of title." But the record chain of title is just that – the <u>record chain of title</u>.[8] The <u>record</u> chain of title demonstrates that Lehman Brothers assigned the Mortgage – directly or indirectly – to the Trust; and the Trust assigned the Mortgage – directly or indirectly – to the Defendant. The <u>record</u> does not suggest that some other entity claims (or may claim) an interest in the Mortgage.[9] And as discussed

---

[8] Plaintiff has identified no authority suggesting that a <u>record chain of title</u> includes unrecorded documents. By definition, the <u>record</u> chain of title is comprised of documents that were filed in the County Register of Deeds' office.

By way of example only, Plaintiff claims that Defendant's representation that the "record chain of title consisted of an Assignment from Lehman Brothers, FSB to the LB-UBS Commercial Mortgage Trust 2005-CI, (the "Trust") and then from the Trust to the Defendant" is "untrue." On the contrary, that is <u>exactly</u> what the record chain of title consists of – nothing more.

[9] In another case cited by Plaintiff, the Michigan Supreme Court explained that "it is the plain intent of [the foreclosure by advertisement] statute that it is a condition precedent to the right to foreclosure by advertisement that the title of an assignee of a mortgage appear of record, and of record in such a manner that evidence extraneous to the record will not be needed to put it beyond reasonable question." *Feldman v. Equitable Trust Co.*, 278 Mich. 619, 625 (Mich. 1937). In this case, without consideration of extrinsic evidence, the <u>record</u> identifies Defendant as the current assignee of the Mortgage. It is only by inspecting extrinsic evidence that Plaintiff can cast "doubt" on the record chain of title by suggesting that there were, in fact, other entities that held an assignment in blank before it was completed and recorded. The statute did not create a system inviting mortgagors to delve into the business dealings of their lenders to determine their compliance with all of their contractual obligations. It offers certain protections to mortgagors, sufficient to ensure they are not at risk of competing claims. And, it offers certain protections to purchasers at a foreclosure sale so that they may purchase a clean title. Those protections are satisfied in this case.

extensively in the original Order, the parties to any assignments appear to have ratified or otherwise acquiesced to the transfers and are not challenging them here or attempting to assert any rights in the Loan Documents. Moreover, as discussed below, by virtue of the fact that Defendant is the holder of the Note, it also holds the Mortgage by operation of law. Finally, regardless of what contracts exist between which entities, Plaintiff was not and is not a party to <u>any</u> of those contracts (including the assignments), and lacks standing to challenge their validity or the parties' compliance with those contracts here.

Although it is not binding precedent, the Bankruptcy Court for the District of Massachusetts was faced with many similar arguments in *In re Almeida*, 417 B.R. 140 (Bankr. D. Mass. 2009), which addressed a trust's standing to obtain relief from the automatic stay in order to foreclose a mortgage.[10] In that case, the trust established that it was the holder of the original note and mortgage. *Id*. at 142-43. But a third party claimed that the trust nevertheless lacked standing for relief from the stay because the note was not properly negotiated, and "mere possession of a mortgage does not grant the possessor any rights under the mortgage, such as the right to foreclose it." *Id*. at 147-148. The third party also claimed that the assignment of the mortgage was invalid because it failed to comply with certain terms of a Pooling and Servicing Agreement (PSA), which the third party claimed required the mortgage to be assigned to an interim entity (defined as the Depositor in the PSA) before being assigned to the trust. *Id*. at 148. And finally, the third party challenged the timing of some of the assignment transactions. *Id*.

---

[10]The challenges to the trust's standing to obtain relief from stay in *Almeida* were similar to Plaintiff's challenges to the Defendant's standing to foreclose by advertisement.

The *Almeida* court first acknowledged the assignee's possession of the note, and the validity of assignments in blank, in general.[11] *Id*. at 148-49. As the holder of the note, the trust had standing to seek payment thereof. *Id*. at 149. The court then explained that, to the extent that the assignment was made without actual authority, that defect was remedied through the assignor's ratification or acquiescence. *Id*. Finally, the court addressed the argument regarding the alleged "invalidity of the Mortgage Assignments because there was no interim assignment of the Mortgage to [the interim depositor entity]:"

> A failure to follow this protocol - such as by direct assignment of the mortgage from the loan originator to the pool trustee, bypassing the depositor - would, the Debtor contends, constitute a breach of the PSA . . . . The Debtor argues that because the Confirmatory Assignment is a direct assignment from [the original holder] to [the trust] that bypasses the depositor, it must be invalid. This argument falls far short of its goal. <u>Even if this direct assignment were somehow violative of the PSA</u>, giving rise to unfavorable tax, regulatory, contractual, and tort consequences, <u>neither the PSA nor those consequences would render the assignment itself invalid</u>.

*Id*. at 149 (emphasis added) (quoting *In re Samuels*, 415 B.R. 8, 22-23 (Bankr. D. Mass. 2009)). The court also noted that the third party lacked standing to challenge the validity of the assignments:

> <u>[The third-party] is not a third party beneficiary of the PSA, and, ironically, he would appear to lack standing to object to any breaches of the terms of the PSA.</u> It would appear to this Court that the investors who bought securities based upon the pooled mortgages would be the parties with standing to object to any defects in those mortgages resulting from any failure to abide by the express provisions of the PSA.

*Id*. at 149 n. 4 (emphasis added). Ultimately, the court found the direct assignment from the original holder to the trust, bypassing assignment to the depositor, "was sufficient to confer standing" to the trust to seek relief from the automatic stay. *Id*. at 150.

---

[11]Notably, although both *Almeida* and *Ibanez*, *infra*, are Massachusetts decisions, *Almeida* suggests that assignments of blank are valid in Massachusetts, while *Ibanez* reaches the opposite conclusion. This distinction is irrelevant here because Michigan permits assignments in blank.

I am persuaded by the court's analysis in *Almeida*. Just as in that case, the Defendant here has established that it is the holder of the original Note and Mortgage. And, just as in *Almeida*, the Plaintiff here lacks standing to assert any breaches in the terms of any contracts between the assigning entities. (Dkt. 24 at 15-18 (discussing Plaintiff's lack of standing to challenge validity of contracts to which it is not a party)). Moreover, any purported breaches in those contracts would not render the assignments themselves (which are separate contracts) void. And by transferring the original Loan Documents, including the Note, Mortgage, and all Assignments, all assigning entities appear to have ratified any alleged breaches in the terms of those contracts.

Plaintiff next suggests that because the right to foreclose by advertisement is contractual, "unequivocally, the Defendant must establish that there is a valid contract for each link in the chain of title that ultimately resulted in the Defendant 'owning' the Note and Mortgage." (Pl. Mot. for Recons. at 11; *see also id.* at 8 n. 6 ("Defendant . . . must show how the right [to foreclose by advertisement] contractually passed from entity to entity.")). First, I note that this argument is simply Plaintiff's most recent attempt to challenge the validity of the assignments and avoid its obligations under the Mortgage by claiming that the power of sale contained in the Mortgage may not be enforced by Defendant. Plaintiff cleverly argues that it is not attempting to avoid its obligations, but instead is challenging Defendant's standing to foreclose by advertisement. But, Plaintiff's arguments reach far beyond challenging Defendant's compliance with the statutory mandates, and extend into analyzing whether there are "valid contract[s] for each link in the chain of title" and whether the parties to those contracts complied specifically with their terms. In other words, Plaintiff seeks to challenge whether each and every entity that ever held an interest in Plaintiff's Note and Mortgage complied to the letter with the terms of each and every contract

11

between it and its successor. These are <u>exactly</u> the types of challenges that Plaintiff, as a stranger to those contracts, lacks standing to assert. Plaintiff, a mortgagor, contractually agreed to permit its mortgagee to foreclose by advertisement. For all of the reasons articulated in the original Order, and the reasons contained herein, Defendant appears to be the holder of Plaintiff's Mortgage.[12] So long as Defendant complies with its statutory obligations, and it appears to have so complied, it (and only it) may foreclose by advertisement.

Moreover, Plaintiff has cited no authority purporting to require a entity foreclosing by advertisement to prove the <u>validity of and conformance with the underlying contracts pursuant to which assignments of the loan documents were executed</u>, nor have I identified any such authority. By its terms, the foreclosure-by-advertisement statute <u>does not</u> require a foreclosing party to conclusively establish a <u>valid contract for each link</u> in the title; it requires <u>only</u> a record chain of title. As discussed, the statute provides protections allowing a mortgagor to ensure that any party foreclosing by advertisement possesses the original Note, and has (at the time it initiates the foreclosure proceedings) a recorded interest traceable to the original mortgage holder. The Defendant here has satisfied those requirements.

I will close by addressing Plaintiff's reliance on *U.S. Bank Nat'l Assoc. v. Ibanez*, No. 08-Misc-384283, 2009 WL 3297551 (Mass. Land Ct. Oct. 14, 2009). According to Plaintiff, although not binding, *Ibanez* "provides an excellent analysis and guidance of some of the issues in this case."

---

[12]Those reasons include, but are not limited to, Defendant is the holder of the indebtedness; each predecessor holder of the mortgage transferred the original Loan Documents to Defendant; each predecessor holder appears to have ratified or adopted the transfers, thus curing any breaches in underlying contracts; and Plaintiff may be barred from challenging Defendant's right to enforce the mortgage (and its contractual power to foreclose by advertisement) by laches, estoppel, waiver, and/or ratification.

(Pl. Mot. for Recons. at 15). That decision, which has resulted in considerable commentary, currently is on appeal directly to the Massachusetts Supreme Judicial Court, scheduled for argument in September.

In *Ibanez*, as relevant here, the Massachusetts Land Court considered the following question: "did the plaintiff [bank] have 'the right . . . to foreclose the subject mortgage in light of the fact that the assignment of the foreclosed mortgage into the [bank] was *not executed or recorded* until *after* the exercise of the power of sale.'" *Ibanez*, 2009 WL 3297551 at *1 (emphasis and omission in original). Specifically, the bank did not obtain or record an assignment of the subject mortgage until fourteen months after the foreclosure sale was concluded.[13] *Id*. at *2 n. 9. At the time of the foreclosure sale, the bank possessed the original note and mortgage, each endorsed in blank. *Id*. at *2. As Plaintiff explains, as in this case, those blank-endorsed documents changed hands multiple times before the foreclosing bank obtained them;[14] each transfer occurred without appearing in the public record.[15] *Id*. at *5. The court inspected the underlying contracts providing for the assignment of the loan documents and determined that some terms of those contracts appeared to have been breached by the parties thereto. Specifically, the agreements required that the mortgage assignment to the bank be "in recordable form at the time the loans were transferred." *Id*. at *8. According to

---

[13]Massachusetts law differs from Michigan law in that it "requires that a foreclosing party have a valid assignment of the mortgage at the time of notice and sale, but it does not require the assignment to be 'of record' at that time." *Id*. at *1 n. 7.

[14]Plaintiff is quick to point out that several of the entities involved in this case were also involved in the mortgage transfers in *Ibanez*. The similarity of parties is not relevant to the analysis of this case.

[15]And, as in this case, the interim transfers occurred by virtue of the transfer of the blank-endorsed documents (i.e. without separate assignment documents being executed for each assignment).

13

Plaintiff, the court found that because only blank assignments were transferred, "in reality, the mortgages themselves were thus still held by the Originator." (Pl. Mot. for Recons. at 16). And, Plaintiff claims, the court found that because the power to foreclose by advertisement is contractual, the violation of the terms of the contract prevented the foreclosure. (*Id*. at 16-17).

But, a closer inspection of the *Ibanez* opinion reveals that the court's holding was based on a very different analysis. Specifically, the court found that "since the blank mortgage assignments failed to name an assignee, they were ineffective to transfer any interest in the mortgage." *Ibanez*, 2009 WL 3297551 at *5. "This is so," it explained, "because Massachusetts follows the 'title theory' of mortgages, making them a type of deed." *Id*. at *5 n. 27. "Under [Massachusetts'] title theory of mortgages, a mortgage of real estate is a conveyance of the title or of some interest therein defeasible upon the payment of money or the performance of some other condition. Literally, in Massachusetts, the granting of a mortgage vests title in the mortgage to the land placed as security for the underlying debt." *Id*. (quoting *Faneuil Investors Group, L.P. v. Bd. of Selectmen of Dennis*, 75 Mass. App. Ct. 260, 264-65 (2009)). Thus, although the bank held the blank-endorsed documents and could enforce the note as "bearer paper", "since the blank mortgage assignment was ineffective, the mortgage remained with [the originator]." *Id*. at *6. And, accordingly, although the court did find that the terms of the contracts providing for assignments required the assignments to be in recordable form, <u>it was the fact that blank assignments are ineffective in Massachusetts – not the fact that they breached the terms of the contracts – that invalidated the assignments</u>. *Id*. at *8 (explaining that the only mortgage assignment executed was "the ineffective blank mortgage assignment", thus the note was held by the bank but the mortgage securing that note was still held by the originator).

14

The *Ibanez* court also analyzed the question of whether the bank should be deemed the "present holder of the mortgage" by virtue of the fact that it was the present holder of the note and blank mortgage assignments. *Id*. at *10. The court rejected this argument for two reasons: (1) "the blank mortgage assignments they possessed transferred nothing" under Massachusetts law (applying analysis regarding the title-theory of mortgages discussed above); and (2) in Massachusetts, "even a valid transfer of the note does not automatically transfer the mortgage. The holder of the mortgage and the holder of the note may be different persons." *Id*. at *11 (citation and internal quotation omitted). Notably, even the *Ibanez* court recognized that an assignment to the bank from the last assignee of record would be sufficient – without the necessity to obtain or record assignments for each interim transfer. *Id*. at *11 n. 48.[16]

I decline to adopt the reasoning of *Ibanez* because the Massachusetts law on which it relies differs from Michigan law in two important aspects.[17] First, unlike Massachusetts, Michigan does not follow the "title theory of mortgages." "Under Michigan law, a mortgage is not an estate in land, it is a lien on real property intended to secure performance or payment of an obligation." *Prime Financial Services v. Vinton*, 761 N.W.2d 694, 703 (Mich. App. 2008) (internal citations omitted); *see also Equitable Trust Co. v. Milton Realty Co.*, 249 N.W. 30, 31 (Mich. 1933) ("A real estate mortgage in this state is but a security, in the nature of a specific lien, for the debt.") (internal

---

[16]Of course, if another assignment was recorded before the bank recorded its assignment, the bank's assignment would again be outside the record chain of title, and the bank would need to obtain an assignment from the *new* assignee of record. *Id*. at *11 n. 48.

[17]I also believe the Massachusetts court erred in inspecting the underlying contracts, and any purported breaches in them, where no parties thereto were challenging their validity or effect. But, as explained above, the court's holding did not turn on that analysis so it does not form a basis for my decision here.

15

quotation and citation omitted). Second, unlike in Massachusetts, in Michigan, a mortgage cannot exist separately from the underlying note. *Prime Financial*, 761 N.W.2d at 703. "A mortgage is a mere security interest incident to an underlying obligation, and the transfer of a note necessarily includes a transfer of the mortgage with it. For the same reason, a transfer of a mortgage without the underlying obligation 'is a mere nullity.'"[18] *Id*. (citing *Ginsburg v. Capital City Wrecking Co.*, 2. N.W.2d 892 (Mich. 1942)); . Thus, <u>when an assignee takes ownership of a note, the underlying mortgage transfers to it by operation of law</u>. *Id*. at 710; *see also id. at* 704 (explaining that, in Michigan, the interests in a mortgage are ascertained by determining whether and to what extent an assignor grants its interest in a note); *Equitable Trust Co*, 249 N.W. at 31 ("A transfer or assignment of the obligation operates as an assignment of the mortgage.") (citation omitted).

Accordingly, under Michigan law, unlike in *Ibanez*, even if the assignment in blank of the mortgage was ineffective – and I do not believe it was – <u>because Defendant possesses the Note, the Mortgage incident to that Note transferred to Defendant by operation of law</u>.[19] And, notwithstanding

---

[18]Plaintiff, in fact, recognized this Michigan doctrine in its original Motion for a Preliminary Injunction (Pl. Mot. for Prelim. Inj. at 10) ("the decisive weight of authority . . . holds that an assignment of a mortgage without the underlying debt is a nullity, and therefore unenforceable . . . . A security interest cannot exist, much less be transferred, independent from the obligation which it secures. The security interest follows the debt. . . . If the debt is not transferred, neither is the security interest.") (internal citations omitted). Thus, because Plaintiff plainly understands that, unlike Massachusetts law, Michigan law does not permit a note and mortgage to be held by different parties, I find Plaintiff's reliance on *Ibanez* – and Plaintiff's misrepresentation of the legal basis on which *Ibanez* was decided – to be disingenuous at best.

[19]Plaintiff makes a last-ditch effort to save its argument by suggesting that the various contracts assigning the notes and mortgages to subsequent mortgagees may have reserved rights in the original Note holder, or may have lacked consideration, or may not have been valid under the laws of the State governing those contracts. (Pl. Mot. for Recons. at 7). Plaintiff cites the Restatement 3d of Property: Mortgages § 5.4 for the proposition that a transfer of a note "also transfers the mortgage <u>unless the parties to the transfer agree otherwise</u>." (*Id*. at 7 n. 4 & Ex. 12 thereto (emphasis added)). But, Plaintiff has cited no binding authority contradicting the Michigan

16

all of Plaintiff's arguments regarding breaches of contracts, incorrectly-named parties, and "irregularities" in assignment documents, just as Defendant is entitled to collect the debt, it is entitled to enforce the other provisions of the Mortgage – including the power of sale.

## II.  CONCLUSION

Defendant is the holder of the Note, and the record holder of the Mortgage with a record chain of title traceable back to the original mortgagee.  As such, as explained in my prior Order, Plaintiff cannot establish a likelihood of success on its claims.  Moreover, Plaintiff has not challenged my previous finding that it cannot establish a likelihood of irreparable harm.  Therefore, I now confirm my finding that Plaintiff is not entitled to a preliminary injunction. Plaintiff's Motion for Reconsideration is DENIED.

**IT IS SO ORDERED.**

Date:     June 14, 2010                              s/ John Feikens
                                                     John Feikens
                                                     United States District Judge

---

doctrine that a transfer of a note transfers the mortgage by operation of law – without regard to any "agree[ment] otherwise."  And, because Defendant is therefore the assignee of the Mortgage, the remaining arguments also fail.  Even if this issue was not dispositive as to Defendant's standing to foreclose by advertisement, as discussed, Plaintiff lacks standing to challenge whether the underlying contracts were valid under the law or lacked consideration.  Plaintiff cannot circumvent its need for standing by couching its argument as an objection to Defendant's standing; Defendant holds the Note, has satisfied the statutory requirement to establish a <u>record chain of title</u>, and is the assignee of the Mortgage.

Proof of Service

I hereby certify that the foregoing order was served on the attorneys/parties of record on June 14, 2010, by U.S. first class mail or electronic means.

        s/Carol Greyerbiehl
        Deputy Clerk